**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| READING INTERNATIONAL, INC., a Nevada corporation,<br>                    *Plaintiff-Appellant*,<br><br>v.<br><br>THE MALULANI GROUP, LIMITED, a Hawaii corporation,<br>                    *Defendant-Appellee*. | No. 14-16827<br><br>D.C. No.<br>1:13-cv-00133-JMS (KSC)<br><br>ORDER |

Appeal from the United States District Court
for the District of Hawaii
J. Michael Seabright, District Judge, Presiding

Submitted to Motions Panel
September 14, 2015

Filed February 25, 2016

Before: Stephen Reinhardt, A. Wallace Tashima,
and Johnnie B. Rawlinson, Circuit Judges.

Case: 14-16827, 02/25/2016, ID: 9877722, DktEntry: 27, Page 2 of 14
Case 1:13-cv-00133-JMS-RT Document 183 Filed 02/25/16 Page 2 of 14 PageID.4984

2          READING INT'L V. THE MALULANI GRP.

## SUMMARY[*]

### Disqualification of Counsel

The panel granted appellee The Malulani Group, Inc.'s motion to disqualify counsel for appellant Reading International, Inc., Bronster Fujichaku Robbins.

The panel applied Hawaii law, which has adopted the "substantial relationship" test for reviewing attorney disqualification where a representation may be adverse to the interests of a former client, codified at Hawaii Rules of Professional Conduct ("HRCP") 1.9(a). The panel concluded that two representations – the pending appeal and a prior case – were substantially related, and held that attorney Kenneth Robbins was barred from representing Reading in the pending appeal under HRCP 1.9. The panel further held that Robbins' disqualification was imputed to the Bronster Firm under HRCP 1.10(c). The panel also held that The Malulani Group had not waived its right to seek disqualification of the Bronster Firm. The panel concluded that the Bronster Firm was disqualified from representing Reading in this appeal.

### COUNSEL

Margery S. Bronster and Rex Yoshio Fujichaku, Bronster Fujichaku Robbins, Honolulu, Hawaii, for Plaintiff-Appellant.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Case: 14-16827, 02/25/2016, ID: 9877722, DktEntry: 27, Page 3 of 14
Case 1:13-cv-00133-JMS-RT   Document 183   Filed 02/25/16   Page 3 of 14   PageID.4985

READING INT'L V. THE MALULANI GRP.            3

Jay S. Handlin and Lindsay N. McAneeley, Carlsmith Ball LLP, Honolulu, Hawaii, for Defendant-Appellee.

## ORDER

Appellee The Malulani Group, Limited ("TMG") moves to disqualify counsel for appellant Reading International, Inc. ("Reading"), Bronster Fujichaku Robbins ("Bronster Firm"). TMG seeks disqualification because attorney Kenneth Robbins, a partner at the Bronster Firm, previously represented TMG while a partner at the firm Robbins & Associates.

We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1291. We grant the motion to disqualify counsel. We express no opinion on the merits of the pending appeal.

The pending appeal challenges the district court's judgment in favor of TMG in Reading's diversity action. Reading alleges that TMG breached a 2009 settlement agreement stemming from an action in the First Circuit Court, State of Hawaii, *Magoon Investments, LLC v. Malulani Investments, Limited*, Civil No. 06-1-2156 GWBC ("Prior Action"). TMG, represented by the firm Robbins & Associates, intervened in the Prior Action as the parent corporation of the defendant Malulani Investments. Reading, represented by the Bronster Firm, was a plaintiff, counterclaim defendant, and defendant in intervention in the Prior Action.[1]

---

[1] Before April 15, 2015, the Bronster Firm was known as Bronster Hoshibata.

Case: 14-16827, 02/25/2016, ID: 9877722, DktEntry: 27, Page 4 of 14
Case 1:13-cv-00133-JMS-RT   Document 183   Filed 02/25/16   Page 4 of 14   PageID.4986

4        READING INT'L V. THE MALULANI GRP.

Most of the legal work done by Robbins & Associates for TMG in the Prior Action was performed by attorney Kenneth Robbins and his associate attorney Sergio Rufo. TMG paid Robbins & Associates a total of $1,211,803.17 in fees and costs in the Prior Action.

The parties to the Prior Action mediated their dispute beginning in June 2008. On March 11, 2009, the parties to the Prior Action placed the broad terms of a settlement on the record with the Hawaii Circuit Court. The mediator indicated on the record that the parties had reached a settlement in principle and had a form of settlement and release, but that these documents were not in their final form, and additional settlement documents needed to be completed as well. The parties confirmed through counsel that they agreed to the substance of the settlement and release agreements put on the record.

On March 16, 2009, TMG's president gave notice to Robbins & Associates that TMG was terminating its engagement, effective immediately. On June 18, 2009, Robbins & Associates moved to withdraw as counsel for TMG in the Prior Action. The motion to withdraw included a declaration by Robbins & Associates associate attorney Sergio Rufo that "the firm's engagement as counsel for [TMG] was terminated on March 17, 2009," and that Robbins & Associates "did not participate in negotiating the settlement of, and has no further role in" the Prior Action.

The parties in the Prior Action negotiated a final set of settlement documents which were executed on July 2, 2009. On the same day, the Hawaii Circuit Court dismissed the claims and counterclaims of all parties in the Prior Action with prejudice, and granted Robbins & Associates' motion to

READING INT'L V. THE MALULANI GRP.          5

withdraw as counsel for TMG. As a condition of withdrawal, the Circuit Court required Robbins & Associates to sign the stipulation to dismiss the Prior Action. However, the stipulation included a statement that "TMG agrees that Robbins & Associates has provided no legal services on behalf of TMG in this matter since March 17, 2009."

In 2013, Reading filed the pending action in the United States District Court for the District of Hawaii, contending that TMG had breached terms of the 2009 settlement documents.[2] The 2009 settlement documents have been publicly filed. Reading is again represented by the Bronster Firm in this action.

On February 4, 2015, the Bronster Firm filed Reading's opening brief in this appeal. On February 20, 2015, the Bronster Firm informed TMG in writing that Robbins was joining the Bronster Firm as a partner, and that Robbins would be screened from participation in the pending action and would be apportioned no part of the fees. The Bronster Firm's letter requested that TMG confirm in writing its consent to the Bronster Firm's continuing representation of Reading pursuant to Hawaii Rules of Professional Conduct ("HRPC" or Rules) 1.9 and 1.10. TMG did not provide oral or written consent. Robbins joined the Bronster Firm effective March 16, 2015.

---

[2] Reading initially filed an action alleging breach of the 2009 settlement documents in the Superior Court of Los Angeles County in May 2011. The California action was dismissed for lack of personal jurisdiction. *Reading Int'l v. Malulani Invs.*, B238331, 2012 WL 4243892 (Cal. App. 2d Dist. Sept. 21, 2012) (affirming dismissal).

6         READING INT'L V. THE MALULANI GRP.

On April 23, 2015, the Bronster Firm filed in the district court a notice of change of firm name, reflecting that the firm had changed its name to Bronster Fujichaku Robbins.  On May 20, 2015, the Bronster Firm filed Reading's reply brief in the pending appeal.  TMG then filed the instant motion to disqualify counsel on June 24, 2015, asserting that Robbins is personally disqualified from representing Reading, and that Robbins' disqualification is imputed to the Bronster Firm.

"Because [federal courts] apply state law in determining matters of disqualification, we must follow the reasoned view of the state supreme court when it has spoken on the issue." *In re Cty. of L.A*, 223 F.3d 990, 995 (9th Cir. 2000).

The Hawaii Supreme Court has adopted the "substantial relationship" test for reviewing attorney disqualification where a representation may be adverse to the interests of a former client.  *See Otaka v. Klein*, 71 Haw. 376 (1980).  The substantial relationship test was codified in HRCP 1.9(a), which provides that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation, and confirms in writing."[3]

For the purposes of this motion, we accept that Robbins & Associates' representation of TMG in the Prior Action ended on March 17, 2009, and that Robbins & Associates

---

[3] HRCP 1.9 does not incorporate the "appearance of impropriety" doctrine found in the former Canon 9 of the Code of Professional Conduct.  *See Otaka*, 71 Haw. 376 (discussing disqualification under former appearance of impropriety standard).

READING INT'L V. THE MALULANI GRP.  7

performed no work for TMG after that date. Additionally, the parties do not dispute that the current representation by the Bronster Firm in the pending appeal is materially adverse to TMG's interests because TMG is the defendant-appellee in the action and Reading has asserted claims against TMG. However, the parties vigorously dispute whether the Prior Action is the same or substantially related to the current representation.

Comment 3 to HRCP 1.9 further addresses when matters are substantially related:

> Matters are "substantially related" for purposes of this Rule if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter. . . . Information that has been disclosed to the public or to other parties adverse to the former client ordinarily will not be disqualifying. Information acquired in a prior representation may have been rendered obsolete by the passage of time, a circumstance that may be relevant in determining whether two representations are substantially related.  In the case of an organizational client, general knowledge of the client's policies and practices ordinarily will not preclude a subsequent representation; on the other hand, knowledge of specific facts gained in a prior representation that are relevant to the matter in question ordinarily

> will preclude such a representation. A former client is not required to reveal the confidential information learned by the lawyer in order to establish a substantial risk that the lawyer has confidential information to use in the subsequent matter. A conclusion about the possession of information may be based on the nature of the services the lawyer provided the former client and information that would in ordinary practice be learned by a lawyer providing such services.

TMG contends the pending appeal is substantially related to the Prior Action, which culminated in the 2009 settlement, in which Robbins was counsel for TMG. In particular, TMG points to Reading's argument before the district court and on appeal that the parties in the Prior Action had intended that TMG would not have a right to cure claimed breaches of the settlement documents. TMG futher asserts that Robbins had confidential information related to the current action by virtue of his representation of TMG in the Prior Action, including TMG's strategies with respect to settlement.

Reading maintains that the current action is not substantially related to the Prior Action, because it asserts that Robbins did not personally participate in the drafting, negotiation, or execution of settlement documents in the Prior Action, Robbins' firm was terminated as of March 17, 2009, and the current action involves only TMG's post-settlement performance of its obligations under the publicly filed 2009 settlement documents.

In the Prior Action, Robbins represented TMG until March 17, 2009. During the course of the representation,

Robbins and his associate actively participated in mediation of the dispute that led to the broad settlement terms entered on the record in March 11, 2009. The pending appeal addresses alleged breaches of the final settlement documents finalized on July 2, 2009. Because the appeal raises issues of the parties' intent in entering into those settlement documents, the factual context of the two representations overlaps, and confidential factual information regarding the parties' settlement positions and strategies, even prior to March 11, 2009, would materially advance the client's position in the subsequent matter. Although Reading argues that the public filing of the settlement makes the information non-confidential, this does not address confidential information Robbins would have obtained in the course of his representation regarding settlement strategy.

Accordingly, we conclude that the two representations are substantially related, and Robbins is barred from representing Reading in the pending appeal under HRCP 1.9.

We must therefore determine whether Robbins' disqualification is imputed to the Bronster Firm. When an attorney joining a new firm brings conflicts from his prior firm, imputed disqualification is governed by HRCP 1.10(c). *See* HRCP 1.10, comment 2. HRPC 1.10(c) provides that "[w]hen a lawyer becomes associated with a firm, and the lawyer is prohibited from representing a client because the lawyer's former firm has represented a person whose interests are materially adverse to that client in the same or a substantially related matter, other lawyers in the firm may not thereafter represent the client unless" the provisions of HRCP

Case: 14-16827, 02/25/2016, ID: 9877722, DktEntry: 27, Page 10 of 14
Case 1:13-cv-00133-JMS-RT   Document 183   Filed 02/25/16   Page 10 of 14   PageID.4992

10        READING INT'L V. THE MALULANI GRP.

1.10(c)(1)–(3) are met.[4]  If all requirements of HRCP 1.10(c) are satisfied, the new firm is required to provide a written notice to the client of the prior firm, but is not required to obtain the prior client's consent to the representation. Reading contends that the screening and notification requirements provided in Rule 1.10(c) have been satisfied in this case, and the Bronster Firm therefore was not required to obtain written consent from TMG pursuant to HRCP 1.7(b)(4) in order to continue its representation of Reading.

The Hawaii Supreme Court has not yet spoken on the applicability or interpretation of HRPC 1.10(c) since it adopted the Rule, which became effective January 1, 2014. Additionally, while the HRPC are modeled on the American Bar Association's Model Rules of Professional Conduct, the Model Rule regarding imputation of conflicts does not contain a screening provision similar to that in HRCP 1.10(c). *See* ABA Model Rule of Professional Conduct 1.10 (imputation of conflicts of interest).[5]  We therefore look to

---

[4] HRPC 1.10 (c): "When a lawyer becomes associated with a firm, and the lawyer is prohibited from representing a client because the lawyer's former firm has represented a person whose interests are materially adverse to that client in the same or a substantially related matter, other lawyers in the firm may not thereafter represent the client unless: (1) the disqualified lawyer did not participate in the matter and has no confidential information regarding the matter; (2) the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and (3) written notice is promptly given to any affected former client to enable it to ascertain compliance with the provisions of this Rule."

[5] Other states have also adopted screening provisions in their rules regulating imputation of attorney conflicts when an attorney is newly associated with a firm.  The provisions vary in how broadly they allow firms to apply the screening procedures to avoid the imputation of

READING INT'L V. THE MALULANI GRP.                11

the plain terms of HRCP 1.10(c), and to the comments to the Rule, to the extent they provide insight on how it should be construed.

"Where the conditions of [HRCP 1.10] paragraph (c) are met, imputation is removed, and consent to the new representation is not required." HRCP 1.10, comment 6. However, the screening procedure provided in HRCP 1.10(c) can only be utilized when "the disqualified lawyer did not participate in the matter and has no confidential information regarding the matter." HRCP 1.10(c)(1). "In situations where the personally disqualified lawyer was involved in a matter, or had confidential information, the new firm will generally only be allowed to handle the matter if the former client at the former law firm of the personally disqualified lawyer consents and the new firm reasonably believes that the representation will not be adversely affected, all as required by Rule 1.7 of these Rules." HRCP 1.10, comment 11.

Reading contends that the phrase "the matter" in HRCP 1.10(c)(1) refers only to the currently pending matter, and not any "substantially related matter" that gave rise to the

---

conflicts from newly associated attorneys. *See*, *e.g.*, Rhode Island Rules of Professional Conduct 1.10(c) (permitting screening of newly associated attorneys who are personally disqualified from a matter, without qualification as to the level of the disqualified attorney's involvement in the prior matter); Arizona Rule of Professional Conduct 1.10(d) (permitting screening of newly associated attorneys where "the matter does not involve a proceeding before a tribunal in which the personally disqualified lawyer had a substantial role"); Indiana Rule of Professional Conduct 1.10(c)(1) (permitting screening of newly associated attorneys so long as "the personally disqualified lawyer did not have primary responsibility for the matter that causes the disqualification under Rule 1.9").

12           READING INT'L v. THE MALULANI GRP.

conflict. TMG argues that the phrase must refer back to the reference to "the same or a substantially related matter" found in Rule 1.10(c) in order to give those words meaning. The court need not resolve this issue becuase we find Reading cannot satisfy the requirement of HRCP 1.10(c)(1) that the disqualified lawyer have "no confidential information regarding the matter", even if "the matter" refers only to the currently pending action. As counsel for TMG in the Prior Action, Robbins and his associate participated in the mediation that led to the settlement of the Prior Action, and had confidential communications and meetings with TMG's principals. Although Robbins had no role in the Prior Action after March 17, 2009 and asserts he was not personally involved in the drafting of the settlement documents, Robbins and his firm represented TMG at the time the parties to the Prior Action placed the broad terms of a settlement on the record with the Hawaii Circuit Court. The Prior Action resulted in the settlement documents that Reading alleges were breached in the current action, and Reading has raised issues on appeal regarding the intent of the parties in those settlement documents. Based on these facts, we find Robbins has confidential information regarding the currently pending matter.[6]

---

[6] HRPC 1.10, comment (10) notes that: "[a] transitioning lawyer very well may have no confidential information if the lawyer did no work on the matter at the former firm and the matter was not the subject of discussion with the lawyer generally, for example at firm or working group meetings. The lawyer must search his or her files and recollections carefully to determine whether he or she has confidential information. The fact that the lawyer does not immediately remember any details of the former client's representation does not mean that he or she does not in fact possess confidential information regarding the matter. However, even if the lawyer has no confidential information about the representation of the

READING INT'L V. THE MALULANI GRP.        13

All conditions of Rule 1.10(c) must be satisfied in order to employ the notice-only screening procedure. Because we find that Rule 1.10(c)(1) cannot be satisfied, we need not reach the parties arguments regarding compliance with the requirements of Rule 1.10(c)(2) and (3).[7]

We turn next to Reading's argument that TMG has waived its right to seek disqualification because it was aware of Robbins' association with the Bronster Firm for four months before filing the motion to disqualify in this court. We disagree. The Bronster Firm notified TMG that Robbins was joining its firm on February 20, 2015, requested a written conflict waiver, and did not receive one. While the Bronster Firm filed a notice of firm name change in the district court docket on April 2015, its next filing in this court on behalf of Reading was the reply brief filed on May 22, 2015. The disqualification motion was filed one month later on June 24, 2015. Under these circumstances, Reading has not met its burden to show that TMG has waived its right to seek disqualification of the Bronster Firm.

This court has warned that a "motion to disqualify a law firm can be a powerful litigation tactic to deny an opposing party's counsel of choice." *In re Cty. of L.A.*, 223 F.3d 990, 995 (9th Cir. 2000); *see also Optyl Eyewear Fashion Int'l Corp. v. Style Cos.*, 760 F.2d 1045, 1050 (9th Cir. 1985) (motions to disqualify "subjected to particularly strict judicial

---

former client, the new firm is disqualified unless all of the screening procedures are followed."

[7] We also need not reach TMG's argument that the Bronster Firm's February 20, 2015 request for consent constitutes an admission that a disqualifying conflict exists.

Case: 14-16827, 02/25/2016, ID: 9877722, DktEntry: 27, Page 14 of 14
Case 1:13-cv-00133-JMS-RT   Document 183   Filed 02/25/16   Page 14 of 14   PageID.4996

14         READING INT'L V. THE MALULANI GRP.

scrutiny"). We are mindful of the drastic nature of disqualification. *See* HRCP 1.9. comment 4 ("If the concept of imputation were applied with unqualified rigor, the result would be radical curtailment of the opportunity of lawyers to move from one practice setting to another and of the opportunity of clients to change counsel."). However, this is not an occasion where a firm was caught unaware of a newly associated attorney's potential conflicts, or where the connection between the actions is attenuated. The Bronster firm was well aware of both Robbins' previous representation of TMG and the existing action before Robbins became associated with the firm. In associating with Robbins, the Bronster firm accepted the risk of disqualification. Accordingly, despite the drastic nature of disqualification, we find that under the particular circumstances presented in this case, HRCP 1.9 and 1.10 require imputed disqualification of the Bronster Firm. The motion to disqualify is **GRANTED**. The Bronster Firm is disqualified from representing Reading in this appeal.

A corporation must be represented by counsel. *See In re Highley*, 459 F.2d 554, 55 (9th Cir. 1972). Accordingly, within 35 days after the date of this order, appellant shall obtain new counsel and file a notice of appearance with the court.

The opening and answering briefs have been filed. We strike Reading's reply brief, filed May 22, 2015 after the disqualifying conflict arose. Reading may file a substitute reply brief within 35 days after new counsel's notice of appearance is filed with the court.