IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| READING INTERNATIONAL INC., a Nevada Corporation,<br><br>            Plaintiff,<br><br>    vs.<br><br>THE MALULANI GROUP, LIMITED, a Hawaii Corporation,<br><br>            Defendant. | CIV. NO. 13-00133 JMS-KSC<br><br>ORDER GRANTING DEFENDANT THE MALULANI GROUP LIMITED'S MOTION FOR SUMMARY JUDGMENT ON ISSUE ON REMAND, ECF NO. 197 |

## ORDER GRANTING DEFENDANT THE MALULANI GROUP LIMITED'S MOTION FOR SUMMARY JUDGMENT ON ISSUE ON REMAND, ECF NO. 197

## I. INTRODUCTION

On March 19, 2013, Plaintiff Reading International, Inc. ("Plaintiff" or "Reading") filed this action alleging that Defendant The Malulani Group, Limited ("Defendant" or "TMG") breached a July 2, 2009 settlement agreement (the "Settlement Agreement") between the parties based on the alleged failure: 1) to provide timely financial statements for certain leased properties; 2) to provide access to financial books and records; and 3) to timely certify compliance with § 5.2(b) of the Settlement Agreement.

1

In two separate Orders, this court granted summary judgment in favor of TMG. *See* ECF Nos. 96, 164; *Reading Int'l, Inc. v. Malulani Grp., Ltd.*, 16 F. Supp. 3d 1185 (D. Haw. 2014), *Reading Int'l , Inc. v. Malulani Grp., Ltd.*, 40 F. Supp. 3d 1312 (D. Haw. 2014). On appeal, the Ninth Circuit affirmed in part, reversed in part, and remanded for a determination of a single issue. *Reading Int'l, Inc. v. Malulani Grp., Ltd.*, 694 F. App'x 571 (9th Cir. 2017). Now before the court is TMG's Motion for Summary Judgment on that single remand issue — whether TMG "materially breached the Settlement Agreement when two individual Defendant Parties failed to timely certify their compliance with § 5.2(b) of the Settlement Agreement." *Id*. at 572.

The court concludes that the failure to timely certify compliance with § 5.2(b) of the Settlement Agreement was not material. TMG's Motion for Summary Judgment is thus GRANTED.

## II. <u>BACKGROUND</u>

### A.    Factual Background[1]

In 2006, Plaintiff purchased stock in TMG's subsidiary, Malulani Investments Limited ("MIL") for $1.8 million. *See* ECF No. 198, Def.'s Concise

---

[1] When not in dispute, the court cites directly to TMG's concise statement of facts, ECF No. 198. Reading does not controvert or even address many of TMG's statement of facts, which the court deems admitted. *See* Local Rule 56.1(g).

Statement of Facts ("CSF") ¶ 1. Approximately six months later, Plaintiff and others commenced litigation against MIL and its directors (Easton Manson, John Dwyer, Jr., Kenwei Chong, and Philip Gray) in Hawaii state court, after which TMG intervened. *Id.* After mediation, the parties reached a settlement in July 2009. *Id.* ¶ 3. This overall settlement was documented in five related agreements, including the Settlement Agreement, a Note, a Mortgage, and two Pledge documents. *Id.* ¶ 6.

The Settlement Agreement, between Plaintiff, Magoon Acquisition and Development, LLC, and James Cotter (collectively defined as "Plaintiff Parties" in the Settlement Agreement), and TMG, MIL, Easton Manson, John Dwyer, Jr., Philip Gray, and Kenwei Chong (collectively defined as "Defendant Parties" in the Settlement Agreement), includes monetary compensation in return for stock. ECF No. 200-4. Specifically, it provides that in exchange for Plaintiff's surrender of all of Plaintiff's stock in TMG companies and other consideration, Defendant Parties shall make a $2.5 million payment to Plaintiff and issue a Promissory Note in the amount of $6.75 million. *Id.* These payments were made, and are not the subject of the instant motion.

The Settlement Agreement also includes a provision regarding the confidentiality and destruction of an investigatory report regarding James Cotter

(the "Kroll Report"), and an April 2, 2008 "Order Regarding Allegation of Improper Purpose by Special Master Michael N. Tanoue" (the "Tanoue Order").[2] Under §§ 5.2(a) and (b), the Settlement Agreement requires the Defendant Parties to destroy all copies of the Kroll/Tanoue Documents in their possession or custody, and to use best efforts to procure and destroy the Kroll/Tanoue Documents in the possession of certain related persons/entities. Next, the Settlement Agreement requires a certification that best efforts were used by the Defendant Parties to comply with §§ 5.2(a) and (b):

> Within forty-five (45) days of the Closing Date, the Defendant Parties (a) shall destroy all copies of the Kroll Report and the Tanoue Order (as defined above) within their possession or custody, (b) shall use their best efforts to procure and destroy all copies of the Kroll Report and the Tanoue Order in the possession or control of the Defendant Parties' past or current affiliates, partners, subsidiaries (including subsidiaries of subsidiaries), parents, agents, principals, directors, officers, investors (direct or indirect), owners (direct or indirect), employees, attorneys, representatives, successors, predecessors, and assigns, and (c) *shall certify in writing to the Plaintiff Parties that the Defendant Parties have used their best efforts to comply with Subsections (a) and (b).*

*Id.* § 5.2 (emphasis added).

---

[2] For ease of reference, the Kroll Report and Tanoue Order are collectively referred to as the "Kroll/Tanoue Documents."

The Settlement Agreement further outlines confidentiality restrictions on Defendant Parties regarding the Kroll/Tanoue Documents, *id.* § 5.2(d)-(g), and states that "this Section is material to this Agreement and has been necessary to induce Plaintiff Parties to enter this Agreement." *Id.* § 5.2. Finally, the Settlement Agreement elsewhere states that "[t]ime is of the essence as to each and every provision of this Agreement." *Id.* § 8.18.

In his declaration, TMG President Easton Manson (also President and Director of MIL) sets forth TMG's compliance with § 5.2. First, he states that all six of the Defendant Parties "complied with Section 5.2(a) by destroying all copies of the [Kroll/Tanoue Documents] in their possession within the 45-Day Period." Manson Decl. ¶ 13; ECF No. 198-1. As to § 5.2(b), on July 6, 2009, Manson sent a letter of behalf of the Defendant Parties "to their respective agents requesting that, in accordance with Section 5.2 of the Settlement Agreement, they each return or destroy all copies of the [Kroll/Tanoue Documents] in their possession." *Id.* ¶ 14. All recipients of that letter, including Chong and Gray's law firm, confirmed that they had "searched for and destroyed or deleted all copies of the [Kroll/Tanoue Documents] in their possession with the 45-Day Period." *Id.* ¶15; *see also* ECF No. 198-8. "Thus, all six Defendant Parties, including Directors Chong and Gray, also complied with Section 5.2(b) of the Settlement Agreement by requesting and receiving confirmation from their agents that their agents had destroyed all copies

of the [Kroll/Tanoue Documents] in their possession within the 45-Day Period."

Manson Decl. ¶ 16.  The 45-day period ended on August 16, 2009.  *Id.* ¶ 10.

The § 5.2(c) certification of compliance with §§ 5.2(a) and (b), however, was incomplete.  As explained by Manson, on August 14, 2009 (again, within the 45-day time period) the six Defendant Parties submitted to Reading a "Certification by Defendant Parties," signed by all six.  *Id.* ¶ 17; *see also* ECF No. 198-9 at 3.  This document certified that all six Defendant Parties complied with the requirements of § 5.2(a), but only listed four of the Defendant Parties as certifying compliance with § 5.2(b).  That is, the certification states that TMG, MIL, Manson, and Dwyer used their best efforts to comply with § 5.2(b) of the Settlement Agreement, but does not mention Chong or Gray.  According to Manson, the certification "inadvertently failed to note similar compliance by Chong and Gray, even though that compliance had occurred."  *Id*. ¶ 17; ECF No. 198-9.[3]

On November 13 and December 4, 2009, Reading sent two notices of default relating to TMG's financial reporting obligations.  *Id*. ¶ 18.  Then, on December 16, 2009, for the first time Reading notified TMG that the August 14,

---

[3]  Without offering an alternative explanation, Reading challenges Manson's characterization of the omission of a § 5.2(b) certification by Chong and Gray as "inadvertent." But whether inadvertent or not, the court determines that the failure of Chong and Gray to timely notify Reading of their actual compliance is not material.

2009 certification was deficient because Chong and Gray had failed to certify compliance with § 5.2(b).  *Id.* ¶ 19; *see also* ECF No. 198-12.  Five days later, on December 21, 2009, Chong and Gray each executed a certification, stating that they had indeed used — before the expiration of the 45-day period — "best efforts to comply with Subsections (a) and (b) of Section 5.2 of the Settlement Agreement."  Manson Decl. ¶ 20; *see also* ECF No. 198-13.[4]

With this background, TMG now moves for summary judgment on the single question remanded by the Ninth Circuit — whether TMG "materially breached the Settlement Agreement when [Chong and Gray] failed timely to certify their compliance with § 5.2(b) of the Settlement Agreement."  *Reading Int'l,* 694 F. App'x at 572.

## B.     Procedural Background

Based on two of this court's previous summary judgment orders, on July 26, 2017, the Ninth Circuit reversed in part, affirmed in part, and remanded.  On January 5, 2018, Defendant filed its Motion for Summary Judgment on Issue on Remand.  ECF No. 197.  Plaintiff filed an Opposition on March 12, 2018, ECF

---

[4]  Reading presents no evidence to show any harm or damage to it from the late certification of compliance with § 5.2(b).  For this untimely certification, Reading seeks to invoke an acceleration clause, resulting in over $448,000 in default fees, $337,000 in late fees, and $618,000 in attorney fees and costs.  Def.'s CSF ¶ 30.

No. 202, and Defendant filed a Reply on March 19, 2018, ECF No. 205.  A hearing
was held on May 21, 2018.

### III.  <u>**STANDARD OF REVIEW**</u>

Summary judgment is proper where there is no genuine issue of
material fact and the moving party is entitled to judgment as a matter of law.  Fed.
R. Civ. P. 56(a).  Rule 56(a) mandates summary judgment "against a party who
fails to make a showing sufficient to establish the existence of an element essential
to the party's case, and on which that party will bear the burden of proof at trial."
*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of
Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of
informing the court of the basis for its motion and of identifying those portions of
the pleadings and discovery responses that demonstrate the absence of a genuine
issue of material fact."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th
Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's
Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004).  "When the moving party has
carried its burden under Rule 56[(a)], its opponent must do more than simply show
that there is some metaphysical doubt as to the material facts [and] come forward
with specific facts showing that there is a *genuine issue for trial*."  *Matsushita
Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal

8

quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at 248). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor." (citations omitted)).

## IV. <u>ANALYSIS</u>

TMG argues that the failure of Chong and Gray to timely certify their compliance with § 5.2(b) was not material. In response, Reading claims, rather flippantly, that "a deal is a deal" and the breach was material. The court first sets

///

///

///

forth relevant law, and then addresses the materiality of the breach.[5]

## A.    The Law Regarding Materiality

"[A]s a general rule, the construction and legal effect to be given a contract is a question of law." *Found. Int'l, Inc. v. E.T. Ige Constr., Inc*., 102 Haw. 487, 494-95, 78 P.3d 23, 30-31 (2003) (citation and quotations omitted).[6] Context matters — "a contract should be construed as a whole and its meaning determined from the entire context and not from any particular word, phrase, or clause." *Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n, Inc*., 113 Haw. 77, 92, 148 P.3d 1179, 1194 (2006) (citations and quotations omitted).

In Hawaii, "[a] material default or breach does not result simply because a party to a contract violates one of the agreement's provisions." *Aickin v. Ocean View Invs. Co.*, 84 Haw. 447, 460, 935 P.2d 992, 1005 (1997) (emphasis omitted).  And in *Golf Carts, Inc. v. Mid-Pacific Country Club*, 53 Haw. 357, 493 P.2d 1338 (1972), the Hawaii Supreme Court explained the general rule of materiality in the context of a claim for contract rescission:

---

[5]  In its analysis, the court addresses the question raised by TMG's Motion for Summary Judgment on Remand, which tracks the specific question remanded by the Ninth Circuit: whether TMG "materially breached the Settlement Agreement when [Chong and Gray] failed timely to certify their compliance with § 5.2(b) of the Settlement Agreement." *Reading Int'l,* 694 F. App'x at 572.  To the extent Reading offers facts or objects to facts that are inconsistent with the question on remand, the court does not consider such matters.

[6]  Section 8.8 of the Settlement Agreement provides that Hawaii law applies to the interpretation and enforcement of the agreement.

> A rescission is not warranted by a mere breach of contract not so substantial and fundamental as to defeat the object of the parties in making the agreement. Before partial failure of performance of one party will give the other the right of rescission, the act failed to be performed must go to the root of the contract or the failure to perform the contract must be in respect of matters which would render the performance of the remainder a thing different in substance from that which was contracted for.

*Id.* at 359, 493 P.2d at 1339 (citing *Yucca Mining & Petroleum Co. v. Howard C. Phillips Oil Co.*, 69 N.M. 281, 285, 365 P.2d 925, 927 (1961)).

Many other courts have also applied this "root of the contract" test. *See, e.g., Process Am., Inc. v. Cynergy Holdings, LLC*, 839 F.3d 125, 136 (2d Cir. 2016) (stating that for a breach to be material under New York law, it must "go to the root of the agreement between the parties"); *In re Interstate Bakeries Corp.*, 751 F.3d 955, 962 (8th Cir. 2014) (applying Illinois law and stating that "if it is determined that a breach is material, or goes to the root or essence of the contract, it follows that substantial performance has been rendered"); *Interbank Invs., L.L.C. v. Vail Valley Consol. Water Dist.*, 12 P.3d 1224, 1229 (Colo. App. 2000) (finding that a material breach "goes to the root of the matter or essence of the contract"). [7]

---

[7] And many other states apply a similar standard, although worded differently. *See e.g.*, *Mitchell v. Straith*, 698 P.2d 609, 612 (Wash. Ct. App. 1985) (stating that a material breach of contract is often defined "as one that substantially defeats the purpose of the contract"); *Specialized Commercial Servs., Inc. v. Welsh*, 2009 WL 532603, at *3 (Ariz. Ct. App. Mar. 3, 2009) ("A generally accepted definition of material breach is a breach that goes to the essence of
(continued . . .)

Finally, the Hawaii Supreme Court has also found the Restatement

(Second) of Contracts § 241 (1979) instructive. It provides:

> In determining whether a failure to render or to offer performance is material, the following circumstances are significant:
>
> (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
>
> (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
>
> (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
>
> (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;
>
> (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

*Aickin*, 84 Haw. at 460 n.27, 935 P.2d at 1005 n.27.

---

(. . . continued)
the contract, defeating the parties' purpose in entering the contract.") (emphasis omitted); *Marion Family YMCA v. Hensel*, 897 N.E.2d 181, 186 (Ohio Ct. App. 2008) (defining a material breach as "a failure to do something that is so fundamental to a contract that the failure to perform defeats the essential purpose of the contract"); *Stansbury v. Fed. Home Loan Mortg. Corp.*, 2017 WL 3821669, at *3 (W.D. Va. Aug. 31, 2017) ("The Supreme Court of Virginia has defined a 'material breach of contract' as 'a failure to do something that is so fundamental to the contract that the failure to perform the obligation defeats an essential purpose of the contract.'") (quoting *Countryside Orthopaedics v. Peyton*, 541 S.E.2d 279, 285 (Va. 2001)).

**B.     Application of the Law Regarding Materiality**

Applying the Hawaii standard, the court concludes that the breach was not material — that is, it did not go to the "root" of the Settlement Agreement.  The undisputed evidence establishes that all six Defendant Parties, including Chong and Gray, timely complied with the *substantive* requirement of § 5.2(a) and (b) of the Settlement Agreement — that is, within 45 days of the closing date they had destroyed all copies of the Kroll/Tanoue Documents within their possession and control (as required by § 5.2(a)), and had used best efforts to procure and destroy copies in the control of related persons/entities (as required by § 5.2(b)).  *See* Manson Decl. ¶¶ 13-16.

The breach came only in the partially untimely certification of this compliance.  While four of the six Defendant Parties certified full compliance within the 45-day window, Chong and Gray certified compliance with § 5.2(a), but not § 5.2(b).  Specifically, although Chong and Gray certified that they had destroyed the Kroll/Tanoue Documents within their own possession or control, they failed to certify pursuant to § 5.2(b) that they had used their best efforts to procure and destroy all copies of these documents in the possession of related persons/entities (although, again, they had in fact used such efforts within the 45-day window).  *See* ECF No. 198-9.

But the clear objective, or "root" of § 5.2 of the Settlement Agreement

was the procurement and subsequent *destruction* of the Kroll/Tanoue Documents within 45 days of closing. And that was done. The fact that Reading was not told of full compliance within the 45 days simply isn't material to the objective to locate and destroy the Kroll/Tanoue Documents. And, although late, Chong and Gray did eventually certify their full compliance on December 21, 2009, only five days after being notified of their non-compliance. Stated differently, § 5.2's primary objective was fully satisfied within the 45 day window — that Reading was not formally notified of full compliance until outside of that 45 day window is not material. Defendant substantially complied, and the limited breach was not related to a matter "which would render the performance of the remainder a thing different in substance from that which was contracted for." *Golf Carts, Inc.*, 53 Haw. at 359, 493 P.2d at 1339 (quoting *Yucca Mining & Petroleum Co.*, 69 N.M. at 285, 365 P.2d at 927).

Reading argues, in part, that the court should consider the breach material because "the express terms of the Settlement Agreement provide that it was a material provision." ECF No. 202 at 8. And while it's certainly true that the Settlement Agreement states that § 5.2 "is material to this Agreement and has been necessary to induce the Plaintiff Parties to enter this Agreement," it does not follow that *any* breach of *any* provision of § 5.2 is necessarily material to the entire Settlement Agreement.

Instead, the Settlement Agreement makes clear that, regardless of context of the entire Settlement Agreement, § 5.2 is to be considered material.[8] But to determine whether a specific *breach* of § 5.2 is material, the court must still consider the "root" or objective of § 5.2 as to the overall Settlement Agreement, and not apply a blanket rule that *any* breach is per se material, no matter how minor or insignificant. For instance, under Reading's theory, had the Defendant Parties complied with § 5.2(c) one day late (or, for that matter, one hour or one minute late), the breach would be material, giving rise to its claim of damages. And the weakness of this argument is demonstrated by Reading's only claim of the damage it suffered: "Reading has been permanently deprived of the benefit of receiving the certifications by the required date." ECF No. 202 at 10. But Reading never explains, or attempts to explain, how the late certification of compliance with § 5.2(b) deprived it of any actual "benefit." It has alleged no harm and no damage, much less produced any evidence to meet its burden at this summary

---

[8] Without the provision specifying § 5.2 as material, the entirety of § 5.2 could be deemed immaterial when viewing the Settlement Agreement as a whole. *See Aicken*, 84 Haw. at 1006 (stating that to determine a breach cuts to the "root" of an agreement, "we first look to the contract as a whole to shed light on the intent of the parties in entering into the [agreement]."). And the primary consideration of the Settlement Agreement was clear — TMG's repurchase of stock in return for $2.5 million in cash and a three-year interest-bearing note for $6.75 million. ECF No. 200-4. That is, the "root" of the overall Settlement Agreement was a substantial amount of money, and this monetary consideration was fully satisfied.

The materiality provision serves to specify that § 5.2 was important or "material" to the overall Settlement Agreement. And the Ninth Circuit remanded for the court to address whether Defendant materially breached the overall *Settlement Agreement*, not whether it breached one aspect of that agreement.

judgment stage.  In fact, Reading claims that it cannot be compensated for this

"deprivation" adequately "due to the difficulty of showing damages."  *Id*.  This

"deprivation" argument falls flat — Reading has offered no evidence in opposition

to show that it was damaged in any way.  Reading proffers nothing indicating it

needed the certification for any external reason.  In other words, Reading's sole

"damage" is the breach itself, not any harm flowing from the breach.[9]

       Applying the test set forth in the Restatement (Second) of Contracts

§ 241, the court reaches the same result.  First, Reading received the benefit that it

reasonably expected.  In fact, Reading has not provided any evidence to show a

deprivation of any benefit, but instead simply claims that "a deal is a deal."

Reading got the full and timely benefit of § 5.2(a) and (b).  Second, Reading can

receive no adequate compensation for its injury because it can prove no injury.

The substantial monetary requirements of the Settlement Agreement were fully

satisfied by TMG.  Third, the penalty under the Settlement Agreement's

acceleration clause that Reading seeks (in total, an amount in excess of

---

[9]  Indeed, as TMG argues, the uncontested evidence indicates that Reading did not even consider the certification material — Reading did not notify TMG about the two missing names until Reading's third notice of default, four months after the deficient certification.  If timely full certification had been so critical, Reading would not have waited.

$1,400,000) would result in an unconscionable forfeiture.[10]  Again, Reading has

shown no injury or prejudice from the breach.  Fourth, TMG did correct Chong's

and Gray's failure to certify compliance with § 5.2(b) by filing a certification on

December 21, 2009.  And fifth, Reading has produced no evidence to suggest that

TMG acted in bad faith.  In short, applying the § 241 factors also demonstrates that

the breach was not material.[11]


///


///

---

[10]  The court also agrees with TMG that, even if the breach were material, the acceleration clause would be unenforceable.  First, the court predicts that the Hawaii Supreme Court would find that the acceleration clause in this case is a form of liquidated damages.  *See The Edward Andrews Grp., Inc. v. Addressing Servs. Co.*, 2005 WL 3215190, at *5 (S.D.N.Y. Nov. 30, 2005) ("An acceleration clause is one type of liquidated damages provision . . . ."); *Bank One, Texas, N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 967 n.31 (N.D. Tex. 1995) ("Accelerated future rents are not a measure of actual harm, but are instead a form of liquidated damages.").  And under Hawaii law, a liquidated damages provision will be enforced if there is a "reasonable relation" between the amount of liquidated damages and the party's actual damages.  *See, e.g.*, *OWBR LLC v. Clear Channel Comm's, Inc*., 266 F. Supp. 2d 1214, 1226 (D. Haw. 2003).  Here, there is no relation whatsoever between the damages Reading seeks under the acceleration clause and its actual damages.  "Hawaii law is clear that a liquidated damages clause that constitutes a penalty will not be enforced."  *Kona Hawaiian Assocs. v. Pacific Grp.*, 680 F. Supp. 1438, 1449 (D. Haw. 1988).

[11]  The court recognizes that the Settlement Agreement also contains a "time is of the essence" clause.  ECF No. 198-2 ¶ 8.18.  But in applying such a clause, the court "look[s] through form to substance."  *Rothenberg v. Follman*, 172 N.W.2d 845, 850 (Mich. Ct. App. 1969) (cited with approval in *Jenkins v. Wise*, 58 Haw. 592, 597-98 n.3, 574 P.2d 1337 n.3 (1978) and *Kaiman Realty, Inc. v. Carmichael*, 65 Haw. 637, 639, 655 P.2d 872, 874 (1982)). Even taking into consideration the "time is of the essence" clause, the failure to timely certify compliance with § 5.2(b) is not material given that the Defendant Parties in fact substantively complied with the required 45 days.

# V.  <u>CONCLUSION</u>

For the foregoing reasons, the court GRANTS Defendant's Motion for Summary Judgment on Issue on Remand.  Because there is another pending matter before the court, the clerk of court is directed not to close the case file at this time.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, May 25, 2018.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Reading Int'l, Inc. v. The Malulani Grp.*, Civ. No. 13-00133 JMS-KSC, Order Granting Defendant The Malulani Group Limited's Motion for Summary Judgment on Issue on Remand, ECF No. 197

18